**Kimberly HARRIS, Individually, and as Personal Representative of the Estate of Donnie L. Harris, Deceased, and Sherry L. Harden, Plaintiffs-Appellees,**

v.

**ILLINOIS–CALIFORNIA EXPRESS, INC., Transport Indemnity Company, Frank H. Williams, Sam Tanksley Trucking, Inc., Excalibur Insurance Company, Ronald W. Head, Defendants-Appellants,**

and

**William D. Harden, Defendant-Appellee.**

Nos. 81–1531, 81–2496.

United States Court of Appeals, Tenth Circuit.

Sept. 3, 1982.

---

Joseph Goldberg and William H. Carpenter, Albuquerque, N. M. (Bette R. Velarde, Albuquerque, N. M., and John G. Yantis of Lusk, Yantis, Mahn & Carter, Chattanooga, Tenn., with them on the brief), for plaintiff-appellee Kimberly Harris.

George Foster Hannett, of Hannett, Hannett & Cornish, Albuquerque, N. M. (George J. Hopkins, of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., with him on the brief), for plaintiff-appellee Sherry L. Harden and defendant-appellee William D. Harden.

Kathleen Davison Lebeck and Richard C. Civerolo of Civerolo, Hansen & Wolf, Albuquerque, N. M., for defendants-appellants Illinois-California Express, Inc., Transport Indemnity Company and Frank H. Williams.

LeRoi Farlow of Farlow, Simone & Roberts, Albuquerque, N. M., for defendants-appellants Sam Tanksley Trucking, Inc., Excalibur Ins. Co. and Ronald W. Head.

Before BARRETT, BREITENSTEIN and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

These appeals are taken by defendants in the trial court against whom jury verdicts were returned and judgments entered thereon for damages incurred as a result of a three vehicle accident which occurred near Clines Corners, New Mexico, on January 29, 1979. The direct appeal is No. 81–1531. The appeal from the trial court's denial of a motion for new trial is No. 81–2496. The appeals were consolidated.

The action was filed on August 1, 1979 by Kimberly Harris individually and as personal representative of the estate of Donnie L. Harris, her late husband. On the day of the accident, the Harrises were passengers in a car driven by William D. Harden. Sherry L. Harden, William's wife, was also a passenger in the car. Kimberly Harris' original complaint named as defendants the drivers, owners, and insurers of the other two vehicles involved in the accident, both of which were trucks. The named defendants were: Frank H. Williams, Illinois-California Express Inc. (ICX), the owner of the truck driven by Williams, and Transport Indemnity, ICX's insurer; Ronald Head,

Sam Tanksley Trucking Inc., owner of the truck driven by Head, and Excalibur Insurance Company, Tanksley's insurer (hereinafter collectively referred to as original defendants).

The accident occurred about 9:00 p. m. in the westbound lanes and shoulder of Interstate Highway I–40 on a stretch known as "Misery Hill" which is an incline on the four-lane highway which reaches the crest of a hill. The four-lane is separated by a median of grass and mud. The eastbound lanes are elevated above the westbound lanes. At the time of the accident, visibility was reduced to only a few car lengths due to fog and snow. The road was slick with ice from the top of the hill to the bottom in both lanes. The ICX truck, westbound, was the first vehicle involved in the accident. It lost traction on Misery Hill as the truck-trailer approached a curve to its left. Williams, the driver, thought he saw a truck in front of his vehicle. He applied his brakes to reduce speed, hoping to maintain control. The ICX truck skidded from the right to the left-hand lane and came to rest blocking the roadway. Williams did not set out flares. It was conflicting as to whether the ICX truck had its flashers on. Within a few seconds, the Harden Honda passenger vehicle crashed into the ICX truck. The right front of the Honda struck the wheels between the double trailers of the ICX truck. Almost simultaneously, the Tanksley trailer-truck struck the left side of the Harden Honda passenger car, forcing the Honda to impact with the ICX truck.

Harris' complaint was based upon diversity of citizenship. It is undisputed that as between Harris and the original defendants complete diversity existed. Subsequent to the filing of the original complaint, on October 19, 1979, the defendants filed a third-party complaint against William D. Harden as third-party defendant. On February 11, 1980 Harden answered the complaint and cross-claimed against the defendants, as third-party complainants.

On February 12, 1980 Sherry Harden moved to intervene as a party-plaintiff in

the action filed by Kimberly Harris. Sherry Harden's motion to intervene was unopposed. On February 27, 1980 the motion was granted. Her intervention complaint asserted claims against the original defendants, but not against her husband, William. Sherry Harden and William Harden are both citizens of the State of Georgia. At this point, William Harden was not a defendant in Kimberly Harris' action; accordingly, complete diversity still existed between the plaintiffs, Kimberly Harris and Sherry Harden, and all of the defendants.

Kimberly Harris then moved to join William Harden as a defendant in her action. Her motion was granted and she filed an amended complaint which asserted an independent cause of action against William Harden. The motion and an order granting the motion were filed and granted on March 12, 1980. At this point, William Harden became a defendant to an action in which his wife had become a plaintiff. Thus, there were citizens of the same state on opposing sides of the action. The original defendants filed a motion to dismiss for lack of diversity jurisdiction on March 27, 1980. They contended that as a named defendant William Harden destroyed diversity jurisdiction. The defendants, for reasons unexplained in the record, subsequently withdrew this motion.

At trial, then, Sherry Harden was aligned as a plaintiff and William Harden was aligned as a defendant. The cross-claims of William Harden asserted a claim against the original defendants only. Sherry Harden did not assert a claim against William Harden and he did not assert a claim against her.

After an eight-day jury trial on all claims, the jury answered special verdict questions and found 40% negligence on the part of the Tanksley defendants, 60% negligence on the part of the ICX defendants and 0% negligence on the part of William Harden. Kimberly Harris was awarded damages in the amount of $400,000 individually and $400,000 in her capacity as personal representative of the estate of Donnie Lee Harris. Sherry Harden was awarded damages in the amount of $30,000. On his cross-claim, William Harden was awarded damages in the amount of $100,000.

On appeal in No. 81–1531, appellants present eight contentions of error: (1) the trial court and this court lack jurisdiction of this case; thus, the judgment is void and the case should be dismissed, (2) the trial court erred in admitting evidence regarding Amy Jolene Harris because such evidence is not relevant or probative and served only to inflame the passions and prejudices of the jury, resulting in a verdict based on jury sympathy, (3) the trial court erred in denying the motion of ICX and Tanksley to join plaintiffs' and co-defendants' insurance companies because those companies had a subrogated interest and because their joinder was necessary to guarantee equal protection and due process of the defendants, (4) the testimony of Leroy Banes was immaterial and prejudicial against Ronald Head and Tanksley and thus erroneously admitted, (5) the jury verdict was inconsistent and should be reversed, (6) the court erred in granting plaintiff's motion dismissing the issue of negligence on the part of Sherry Harden, (7) the court erred in its failure to instruct the jury that Kimberly Harris is required by New Mexico law to mitigate her damages, and (8) the case should be remanded because of New Mexico's pure form of comparative negligence.

In No. 81–2496, appellants contend that the trial court erred in denying their post-judgment motions for relief from judgment because of "newly discovered evidence" and to take additional depositions in support thereof, filed, respectively, pursuant to Fed. R.Civ.P. 60(b) and 27(b), 28 U.S.C.A.

We will discuss the issues in the order of importance we view them dispositive of this appeal. It should be observed that no contention has been posited challenging the sufficiency of the evidence.

I.

Appellants contend that both the trial court and this court lack diversity juris-

**1366**

diction because "plaintiff-in-intervention Sherry Harden is a George [sic] resident and defendant David Harden [William D. Harden] is a Georgia resident. Plaintiff Harris alleging Tennessee residence originally filed suit against ICX and Tanksley claiming diversity of citizenship and amount in controversy in excess of $10,000. 28 U.S.C. 1332 . . . . Plaintiff subsequently amended her complaint to include David Harden, a Georgia resident, as a defendant . . . . Subsequently, Sherry Harden (wife of David) moved to intervene as a plaintiff . . . and subsequently filed her complaint-in-intervention claiming damages against defendants ICX, Williams, Transport, Tanksley, Head and Excalibur." [Brief of Defendants-Appellants, p. 12, Case No. 81–1531].

The above recital of facts is erroneous in one vital respect: Sherry Harden's motion to intervene as a party-plaintiff in Harris' action was filed on February 12, 1980, and the order granting the motion was entered on February 27, 1980. It was not until March 12, 1980, that Kimberly Harris' motion to amend her complaint, so as to assert an independent cause of action against William Harden as a party defendant was filed and granted. Thus, there is no question that Sherry Harden's intervention as a party plaintiff occurred *prior* to Harris' motion and filing of her amended complaint. We hold that the permissive intervention of Sherry Harden as a party plaintiff did not destroy diversity jurisdiction, notwithstanding the fact that, following Kimberly Harris' subsequent filing of her amended complaint naming William Harden, husband of Sherry, as a party defendant, there then existed a plaintiff and a defendant each residents of the same state.

■ The issue of jurisdiction to adjudicate claims does not depend upon prior action or consent of the parties. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Any federal court must, *sua sponte,* satisfy itself of its power to adjudicate in every case and at every stage of the proceeding, and the court is not bound by the acts or pleadings of the parties. *Treinies v. Sunshine Min. Co.,* 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Mendoza v. K-Mart, Inc.,* 587 F.2d 1052 (10th Cir. 1978).

■ Where jurisdiction is lacking, the judgment is void and the case must be dismissed. *Mitchell v. Maurer,* 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *Citizens Concerned for Separation of Church and State v. City and County of Denver,* 628 F.2d 1289 (10th Cir. 1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981).

The relevant statute involved here is 28 U.S.C.A. § 1332(a)(1). It confers jurisdiction upon federal courts over civil actions between citizens of different states, where the matter in controversy exceeds the sum of $10,000. In *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Supreme Court said:

This statute and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff. Over the years Congress has repeatedly re-enacted or amended the statute conferring diversity jurisdiction, leaving intact this rule of complete diversity. Whatever may have been the original purposes of diversity-of-citizenship jurisdiction, this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant. [footnotes omitted].

437 U.S. at pp. 373–374, 98 S.Ct. at p. 2402.

*Accord, Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Peninsular Iron Co. v. Stone,* 121 U.S. 631, 7 S.Ct. 1010,

30 L.Ed. 1020 (1887); *United Nuclear Corp. v. Moki Oil & Rare Metals Co.*, 364 F.2d 568 (10th Cir.), *cert. denied*, 385 U.S. 960, 87 S.Ct. 393, 17 L.Ed.2d 306 (1966); *Knoll v. Knoll*, 350 F.2d 407 (10th Cir. 1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 891, 15 L.Ed.2d 664 (1966).

■ Once jurisdiction is grounded in diversity, it is not lost by the intervention, by leave of the court, of a party whose presence in the action is not indispensable, but simply permissive and who, in any event, has an independent basis for jurisdiction. *Miller & Miller Auction., Inc. v. G. W. Murphy Indus., Inc.*, 472 F.2d 893 (10th Cir. 1973). Contrary to the view advanced by appellants, we hold that Sherry Harden was not an indispensable party in this case. Fed.R.Civ.P. 19(a), 28 U.S.C.A. provides that a person otherwise subject to service of process shall be joined as a *party in the action* if (1) in his absence complete relief cannot be accorded those already parties, or (2) he claims an interest relating to the subject of the action and the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect his interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or inconsistent obligations by virtue of his claimed interest.

■ In the instant case, while the claims advanced by Kimberly Harris and Sherry Harden arose out of the vehicle collision of January 25, 1979, the only fact common to the separate claims pleaded by Harris and Sherry Harden is that their claims arose by reason of injuries sustained in that accident. The record amply demonstrates that Kimberly Harris' claims were in nowise dependent upon Sherry Harden as a party. In short, Harris could successfully advance her claims and action completely independent of Sherry Harden. By the same token, Sherry Harden's claims were not dependent upon Kimberly Harris as a party. Here, too, Sherry Harden could successfully advance her claims and action completely independent of Kimberly Harris. Thus, the claim of Sherry Harden was not ancillary to that of Kimberly Harris insofar as the term "ancillary" is denoted to be a claim collateral to or dependent upon, or otherwise ancillary to a claim resting upon established federal jurisdiction. Sherry Harden's claim was firmly anchored to grounds independent of those asserted by Kimberly Harris.

We turn now to Fed.R.Civ.P. 24(b), 28 U.S.C.A. which provides that upon timely motion anyone may be permitted to intervene (permissive intervention) in a pending action either when (1) a statute of the United States confers such right (not applicable here), or (2) when the applicant's claim or defense and the main action have a question of law or fact in common.

■ Sherry Harden's motion for intervention pursuant to Rule 24(b), *supra*, was unopposed. It was clearly for permissive intervention. Sherry Harden had an independent ground for jurisdiction based on diversity. Although the claims of Sherry Harden and Kimberly Harris are not dependent one on the other and may be maintained independently, they do arise from the identical aggregate core of operative facts under circumstances where the claims are not adverse or in conflict. Thus, judged from the respective pleadings, Kimberly Harris and Sherry Harden had independent bases for jurisdiction grounded in diversity, and each stated independent, separate causes of action relating to a common core of operative facts. Accordingly, while both claims had questions of law and fact in common, they were independent one from the other. 7 A Wright & Miller, *Federal Practice and Procedure: Civil*, § 1917 (1972); 3B *Moore's Federal Practice*, ¶ 24.-18[3] (2d ed. 1982). As such, the pleadings and claims of Kimberly Harris and Sherry Harden may, in the trial court's discretion, be treated as separate actions.

Intervention, whether granted as a matter of right pursuant to Rule 24(a) or by

permission pursuant to Rule 24(b), is ancillary to the main action in the sense that whenever the main action is terminated, for whatever reason, there is no action in which there can be intervention. Again, we observe that Sherry Harden's intervention was permitted prior to the time Harris moved to amend her complaint to state a cause of action against William Harden, Sherry's husband. Thus, when Sherry Harden intervened there existed complete diversity between the parties plaintiff and the parties defendant. In *Wichita R. R. & Light Co. v. Pub. Util. Comm'n,* 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922), the Court said:

> The intervention of the Kansas Company, a citizen of the same State as the Wichita Company, its opponent, did not take away the ground of diverse citizenship. That ground existed when the suit was begun and the plaintiff set it forth in the bill as a matter entitling it to go into the District Court. Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties .... *Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties* .... The Kansas Company, while it had an interest and was a proper party, was not an indispensable party. [Emphasis supplied].
>
> 260 U.S. at pp. 53–54, 43 S.Ct. at p. 53.

Finally, we observe that in light of the fact that the claims advanced by Harris and Sherry Harden established separate, independent bases for jurisdiction, Sherry Harden could have filed a separate, distinct complaint and action against the same defendants named in Harris' original complaint. Had she done so, Sherry Harden could have moved, pursuant to Fed.R. Civ.P., 42(a), 28 U.S.C.A., to consolidate her action with that of Kimberly Harris inasmuch as the actions involve a common question of law and fact. Where the subject matter of the claims made in separate actions arise out of the same transaction and involve common issues of law and fact, the actions have been consolidated where the rights of the parties will be adequately protected. 5 *Moore's Federal Practice,* ¶ 42.-02[3] (2d ed. 1982). Consolidation of cases is permitted as a matter of convenience and economy, even though consolidation does not merge separate suits into one cause of action. Consolidation in such cases accomplishes those "considerations of judicial economy and fairness" referred to in *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 617, n. 14, 86 S.Ct. 1018, 1025, n. 14, 16 L.Ed.2d 131 (1966), involving the exercise of ancillary jurisdiction.

The discretion of the trial court to grant intervention has been likewise recognized in relation to dismissing a party if the continued presence of that party destroys the requisite diversity, providing, of course, that the party dismissed is not an indispensable party. *Jett v. Phillips & Associates,* 439 F.2d 987 (10th Cir. 1971).

We recognize that here, just as in *Owen Equipment and Erection Co. v. Kroger, supra,* the plaintiff, Kimberly Harris, by filing her amended complaint joining William Harden as a party defendant in her action, defeated complete diversity between all of the plaintiffs and all of the defendants. This was so simply because Sherry Harden, a party plaintiff by virtue of permissive intervention, and William Harden, then a named defendant in Harris' action, were both residents of the State of Georgia. The case at bar, however, unlike *Owen,* is more akin to actions consolidated under Rule 42, *supra.* Just as Sherry Harden was not an indispensable party to Harris' action, so, too, William Harden was not an indispensable party to Harris' action. If William Harden had been an indispensable party to Harris' action, the trial court may have been ousted of jurisdiction when he was joined as a party defendant by virtue of Harris' amended complaint, unless the

court had ordered Sherry Harden dropped from the suit as a party plaintiff. *See* 32A Am.Jur.2d *Federal Practice and Procedure* § 1434. There is sound authority for the proposition that a non-diverse party whose presence is not essential under Rule 19, *supra,* may be dropped to achieve diversity between the plaintiffs and the defendants. *Jett v. Phillips & Associates, supra;* 3 *Moore's Federal Practice,* ¶ 15.08[3] and [4] (2d ed. 1982). It follows that if the party whose dismissal is sought is indispensable, then a motion to drop must be denied and the case dismissed for lack of diversity jurisdiction. No such problem presented itself in this case, simply because neither Sherry Harden or William Harden were indispensable parties to Kimberly Harris' action.

In *Owen Equipment and Erection Co. v. Kroger, supra,* the Court said:

It is not unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights *or effectively to resolve an entire, logically entwined lawsuit.* Those practical needs are the basis of the doctrine of ancillary jurisdiction. But neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case. Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship.

437 U.S. at p. 377, 98 S.Ct. at p. 2404.

We hold that the trial court had jurisdiction of this lawsuit.

## II.

Appellants contend that the trial court erred in admitting evidence concerning Amy Jolene Harris because such evidence was not relevant or probative and served only to inflame the passions and prejudices of the jury, resulting in a verdict based on jury sympathy.

Kimberly Harris' suit included a claim, as personal representative of her husband's estate, for damages resulting from the negligence of the defendants under the New Mexico Wrongful Death Act, N.M.Stat.Ann. §§ 41–2–1 to 41–2–3 (1978). That act identifies a child of a decedent as a statutory beneficiary in a wrongful death action. At trial, Harris presented evidence that decedent, Donnie Harris, had a four-year-old daughter, Amy Jolene Harris, by a prior marriage. Defendants objected to this evidence on the ground that it was irrelevant. The predicate was that the New Mexico Wrongful Death Act does not recognize the existence or number of statutory beneficiaries as an element of damages and because it is not necessary for recovery to establish that a statutory beneficiary exists. Thus, they argue, the admission of the evidence that Amy Jolene Harris is the surviving daughter of Donnie Lee Harris was violative of Rule 401, Fed.R.Evid., 28 U.S.C.S. Appendix, which defines "relevant evidence" as evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The trial court has broad discretion in receiving or rejecting evidence for purposes of Rule 401. *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979). The determination of admissibility of evidence at trial is within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of clear abuse of discretion. *United States v. Ashley,* 555 F.2d 462 (5th Cir.), *cert. denied,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977); *United States v. Kelly,* 545 F.2d 619 (8th Cir. 1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977); *Young v. Anderson,* 513 F.2d 969 (10th Cir. 1975). This is a diversity case

and is governed by the substantive law of New Mexico. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Rigby v. Beech Aircraft Co.*, 548 F.2d 288 (10th Cir. 1977).

In *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972), the court considered the defendant's objection to the admission in evidence of the identification of the decedent's wife and children as beneficiaries under the New Mexico Wrongful Death Statute, and said:

> The objection was that the testimony was impermissible because under our wrongful death statute, see § 22–20–3, N.M.S.A. 1953 [now §§ 41–2–3, *supra*] "[i]t's the pecuniary benefit to the estate and not to any individuals . . . ." Further: ". . . It is a pecuniary value, pecuniary damage, to the estate and the wife and children being the distributees have nothing to do with the question of damages . . . ."
>
> . . . The *Stang* decisions [*Stang v. Hertz Corporation*, 81 N.M. 69, 463 P.2d 45 (Ct. App.1969) and *Stang v. Hertz Corporation*, 81 N.M. 348, 467 P.2d 14 (1970) ] held that pecuniary injury was not a prerequisite to the recovery of damages for wrongful death; they did not hold that pecuniary injury to the statutory beneficiaries was inadmissible evidence on the question of damages. To the contrary, *Stang I*, supra, states: "Pecuniary injury to a statutory beneficiary is an element to be considered in awarding damages under § 22–20–3, supra. Its absence (or presence) is to be considered in arriving at the amount of the award . . . . Pecuniary injury to the statutory beneficiary is proved so that the fact finder may consider this injury in awarding damages for the wrongful death . . . ."
>
> . . . In this case . . . the wife and children were distributees of any damage award . . . . Evidence of pecuniary injury to the wife and children was proper.

501 P.2d at pp. 684–685.

We hold that the trial court did not err in overruling appellants' objection to the admission in evidence of testimony that Amy Jolene Harris was the surviving minor daughter of decedent, Donnie Harris.

At trial, Amy Jolene Harris' natural mother, Mrs. Soos [who had divorced Donnie Harris] testified that Amy Jolene was conceived of Donnie Harris during the term of their marriage and born within 300 days after the divorce. She also testified that following Amy Jolene's birth, Donnie Harris contributed about $500 to her support, and that she (the natural mother) accepted Donnie's representation that he was unable to contribute more. At the time of the divorce Amy Jolene's parents resided in Colorado. Colo.Rev.Stat. § 19–6–105(1)(a) (1973) provides that a presumption exists that a man is the father of a child born during marriage or within 300 days after dissolution of the marriage by divorce. Colo.Rev.Stat. § 19–6–105(2) provides that the presumption may be rebutted only by clear and convincing evidence and only "a child, his natural mother, or a man presumed to be his father" have standing to challenge the presumption. Colo.Rev.Stat. § 19–6–107(1) (1973). The Colorado statute does not recognize the right of tort defendants or their insurers with standing to rebut the presumption of paternity.

Even so, appellants contend cumulative errors occurred relative to Amy Jolene which constitute reversible error. Appellants argue that the physical display of Amy Jolene to the jury by counsel for Harris at the commencement of trial, which appellants refer to as "the introduction of an attractive four-year old little girl", and the testimony of Amy Jolene's mother, Mrs. Soos, that she and Donnie Harris were married for a little more than a year-and-a-half and that Amy Jolene was born September 15, 1976, following her divorce from Donnie in August of 1976 ("We were divorced in—I think it was August of '76") after she and Donnie had been separated for about two-and-a-half months, led the jurors' sympa-

thies to become ignited in making their determinations of both the percentages of liability under comparative negligence and the excessively high verdict regarding damages in the loss of life of Donnie L. Harris.

Appellants further contend error in the trial court's oral insertion of the name of Amy Jolene Harris as a plaintiff in the course of the court's general instructions to the jury, and the trial court's action in sustaining objections made to appellants' attempts to raise any questions as to Amy Jolene's paternity. The basis for these contentions is this: Appellants offered the deposition testimony of William D. Harden, who had been identified as a close friend of decedent Donnie Harris for a period preceding his marriage to Mrs. Soos, that he did not know that decedent "had any kids". The trial court did not abuse its discretion in excluding this evidence. It had little or no probative value and certainly does not constitute the "clear and convincing evidence" required under Colo.Rev.Stat. § 19–6–105(2) (1973).

We hold that none of the contentions made by appellants relative to Amy Jolene Harris, individually or collectively, constitute trial court error. We have already cited the substantive law of New Mexico that it is not error to admit evidence identifying the decedent's wife and children as beneficiaries under the New Mexico Wrongful Death Act. The only questionable area of prejudice asserted involves the identification by counsel for Harris of Amy Jolene Harris in the courtroom after the jury was impaneled and trial had commenced. Even so, there has been no showing of actual prejudice. Appellants would ask the court to substitute its discretion in lieu of that of the trial court. This we cannot do. In our view, the simple physical identification of Amy Jolene to the jury could not, *per se*, give rise to prejudicial error. The New Mexico law permits her identification as a beneficiary. We recognize that her physical identification was unnecessary and perhaps improper, but cer-

tainly not so prejudicial as to require a new trial. Jurors are presumed to abide their oaths requiring them to decide the case based upon the facts and the law as instructed by the court. Nothing in the record indicates that the jury detoured from its assigned route. We note that the trial court specifically ruled that under Rule 403, Fed.R.Evid., 28 U.S.C.S. Appendix, the identification of Amy Jolene Harris did not have prejudicial effect which would outweigh the probative value of the child's introduction to the jury. We agree.

Appellants attempt to bolster their contention that the jury returned the Harris verdict, the result of passion and prejudice, because the trial court, while instructing the jury, erroneously referred to Amy Jolene as a party and because the jury, during the deliberations sent a note to the trial judge stating, "We are unable to find the instruction which states what percentage is to be placed in trust for Amy; please clarify." The trial judge, out of the hearing of the jury but in the presence of counsel, stated that there was no such instruction (relative to placing funds in trust) but that he had simply mentioned it. Thereupon, the court submitted a note to the jury, without objection, stating that the distribution of any funds awarded to the Estate of Donnie Lee Harris is a matter of law about which the jury should not concern itself.

We are satisfied that the trial court's reference to Amy Jolene Harris as a beneficiary of the Estate of Donnie Lee Harris in the course of instructions to the jury was not error. The reference was, of course, in accord with New Mexico case law authorizing identification of statutory beneficiaries in a wrongful death action. The court's reference was made in that light. In sum, appellants have not established clear error relative to the admission of evidence and/or court instructions relative to Amy Jolene Harris. Thus, we hold that the jury verdict award on behalf of the Harris claim was not the result of passion and prejudice generated by the alleged inadmissible evidence

relative to Amy Jolene Harris. An expert for Harris testified that the present value of Harris' lost wages was more than $518,-000. The jury assessed damages of $400,-000.

### III.

Appellants contend that the trial court erred in denying the ICX and Tanksley motion to join plaintiffs' and co-defendants' insurance companies because those companies had a subrogated interest and because their joinder was necessary to guarantee equal protection and due process of the defendants.

Defendants moved to join the insurance companies of co-defendant William Harden and Harris on the ground that the law of New Mexico requires the joinder of those companies as real parties in interest and as necessary parties. The predicate was that because those companies had a subrogated interest in the Harden and Harris claims, their joinder was necessary. Appellants rely on *Maurer v. Thorpe*, 95 N.M. 286, 621 P.2d 503 (1980), in support of their contention that the substantive law of New Mexico requires the joinder of a subrogee insurance company. *See also Sellman v. Haddock*, 62 N.M. 391, 310 P.2d 1045 (1957). Appellants point out that because the defendants' insurance companies had been joined as parties defendants, the jury was thus aware of the fact that the defendants, ICX and Tanksley, were insured. Appellants argue that *Maurer, supra*, requires, as a matter of due process and equal protection, that under such circumstances the other parties' insurance carriers be named as parties also because such joinder is necessary to balance or neutralize the prejudice. The *Maurer* opinion supports the proposition that when a plaintiff is compelled by law to join its insurer to its cause of action, the jury may very likely believe that the plaintiff has already been sufficiently compensated for its injury. The court reasoned that due process requires, under such circumstance, that the rights of the parties can only be protected when the defendant's insurance company is named as a party to the action:

> In this way we can insure the integrity of the fact finding process and the basic fairness of the decisions, which are the principal considerations of due process. *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 597 P.2d 290 (1979), *cert. denied*, 444 U.S. 911 [100 S.Ct. 222, 62 L.Ed.2d 145] ... (1979).

\* \* \* \* \* \*

> We decide only that a plaintiff, who is compelled by law to join his insurer and is then denied the right to name the defendant's insurance carrier as a party-defendant, is prejudiced in presenting his case and that such practice is fundamentally unfair and violates concepts of due process of law.

621 P.2d at p. 505.

In *Sellman v. Haddock, supra*, the court reviewed New Mexico law and found that a plaintiff's insurer which pays policy proceeds to the plaintiff becomes a subrogee of any claim pressed by the insured against the party causing the injury and, thus, is deemed to be an indispensable party to the action and is required by law to be named as a party-plaintiff; however, the insurer of a defendant in cases based on tort liability is allowed to remain anonymous to the action.

Defendants' motion to add named insurance companies as parties plaintiffs, filed February 6, 1981, was grounded on (1) alleged answers to interrogatories given by Kimberly Harris that a named insurance company had paid part of her medical bills and part of the funeral expenses for her deceased husband, Donnie, (2) information and belief that named insurance companies paid certain benefits for the Estate of Donnie L. Harris, (3) that William D. Harden and Sherry L. Harden, by answers to interrogatories, stated that certain of their expenses and losses resulting from the accident were paid by named insurance companies.

The pretrial order in this case was entered on February 4, 1981. It recited a trial setting of Monday, February 23, 1981. The motion to add parties as involuntary plaintiffs and crossclaimants was dated February 6, 1981. The motion was filed more than four months after the trial court's deadline set for filing of pretrial motions, other than discovery motions, of October 1, 1980, and just five days prior to jury selection. The trial court, by order of September 4, 1980, explicitly stated that no pretrial motions filed after October 1, 1980, would be considered timely, and that the deadline for completion of all discovery proceedings was set at October 29, 1980, to be extended only by an order of the court upon a showing of good cause. [R., Vol. I, p. 62, 81–1531]. In this posture, the trial court denied the defendants' motion to join the Harris and Harden insurers on the ground that the motions were untimely filed and without merit. It is significant that: Kimberly Harris answered interrogatories on February 29, 1980, stating that State Farm Insurance Company had paid part of her medical bills and part of the funeral expenses for Donnie L. Harris; William D. Harden answered interrogatories May 19, 1980, stating that some of the expenses he incurred had been paid by Georgia Farm Bureau Insurance; and that Sherry L. Harden answered interrogatories on May 8, 1980, stating that losses she had suffered had been paid by Farm Bureau Mutual Insurance Company of Macon, Georgia. Thus, this information was made available to defendants-appellants at least eight months prior to the entry of the pretrial order on February 3, 1981, and at least four months prior to the court's order of September 4, 1980. The pretrial order specifically referred to the pleadings, as amended. Paragraph 13 constituted an acknowledgment that the pretrial order would control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice; further that the pleadings shall be deemed merged in the order. [R., Vol. I, p. 105, 81–1531].

In *Wright v. Albuquerque Auto-Tr. Stop Plaza, Inc.*, 591 F.2d 585 (10th Cir. 1979), this court held that when an insured, in a diversity case arising under the law of New Mexico, who had been reimbursed by his insurer for only part of his loss, brings suit against the tort-feasor, the insured's suit is not subject to dismissal merely because of the failure to join the insured as a party. We observed, however, that the insured may be joined upon timely motion.

*Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715 (10th Cir. 1976), is another diversity case arising under the law of New Mexico, strikingly similar to the case at bar in relation to the joinder issue. The defendants there relied on Rule 17(a), Fed. R.Civ.P., 28 U.S.C.A. requiring that every action shall be prosecuted in the name of the real party in interest and New Mexico law. We held that the defendant-appellant's argument that the trial court erred in permitting the named party to proceed as the real party in interest must fail for failure to raise the matter in a timely fashion and that failure to do so constitutes waiver. We observed:

> In its answer AVMC [defendant-appellant] did not put in issue Omni's standing to maintain the present action, nor had it previously done so by motion. The pretrial order does not list Omni's standing to maintain the action in its own name as one of the issues to be tried. After trial had commenced, counsel for the first time intimated that Omni was not the real party in interest . . . .
>
> . . . AVMC's argument based on the alleged failure to have the action prosecuted by the real party in interest fails . . . . We would first note that such objection is for the benefit of a defendant, and should be raised in a timely fashion or it may be deemed waived. *See* Wright and Miller, Federal Practice & Procedure, § 1554, pages 700–704.

545 F.2d at p. 719.

When, as here, the defendants had full knowledge for at least eight months

prior to trial that plaintiffs Harris and Sherry Harden and third party defendant, William Harden, had received benefits, at least in part, from their insurance carriers for losses arising from the subject accident, any prejudice resulting from non-joinder of the respective insurance companies as real parties in interest and as necessary parties by motion filed less than two weeks prior to trial was the result of untimely filing of the motion. The trial court did not abuse its discretion in denying the motion. The parties had prepared for trial. All procedural maneuvering and discovery had been completed and all witnesses had been alerted to the trial date.

There is a further ground supporting the trial court denial of the motion as being without merit. The pretrial record confirms only that certain benefits were paid by insurance companies to Harris, Sherry L. Harden and William Harden. No evidence was tendered to the trial court supporting a finding of subrogation. New Mexico law provides that an insurer is not subrogated to a claim of its insured unless there exists an express agreement or assignment, or an express provision in the insurance policy providing for subrogation. *See Sellman v. Haddock, supra; Armijo v. Foundation Reserve Insurance Co.,* 75 N.M. 592, 408 P.2d 750 (1965). The appellants could not rely simply on the responses contained in the interrogatories that the insurers made some payments to Harris, Sherry Harden and William Harden in support of their motion. The appellants did not provide sufficient evidence to establish subrogated interests.

### IV.

Following trial, the defendants filed a motion for relief from judgment pursuant to Fed.R.Civ.P., 60(b), 28 U.S.C.A. and a motion for leave to take additional depositions pursuant to Fed.R.Civ.P., 27(b), 28 U.S.C.A. Defendants sought a new trial based upon newly discovered evidence and fraud, misrepresentation or other misconduct involving the plaintiff Harris' representation that Amy Jolene Harris was the daughter of the decedent, Donnie L. Harris. The trial court denied the motions without a hearing.

Appellants contend that the trial court denied them due process of law by denying their motions without the benefit of discovery and hearing. We hold that the trial court did not err in denying the two motions.

There is no authority cited by appellants entitling them to a hearing on the motions. Defendants filed briefs and numerous affidavits in support of their motions. The district court was fully aware of appellants' factual and legal bases and theories. The thrust of the appellants' motion for new trial predicated on newly discovered evidence is (1) an affidavit and attached letter that the birth certificate of Amy Jolene Harris does not contain the name of her father, (2) that the divorce petition filed by Mary Ellen Soos in her proceeding against Donnie L. Harris contains a recitation that she was not then pregnant and the decree makes no reference thereto, (3) an affidavit of one Gerald Young stating that Mary Ellen Soos' brother, Michael Wheatley, informed him that his sister had named a man known as Joey Hughes as Amy Jolene's father. The defendants moved to depose six named persons, including Mary Ellen Soos, with knowledge or information concerning the issue of whether or not Amy Jolene Harris was in fact the daughter of the deceased, Donnie L. Harris.

It is well established that "newly discovered evidence" to support a Rule 60(b)(2) motion must be such as was not and could not by the exercise of diligence have been discovered in time to present in the original proceeding. 7 *Moore's Federal Practice,* ¶ 60.23[4] (2d ed. 1982). We observe that Kimberly Harris, in response to defendants' pretrial interrogatories, specifically responded to Question 35 inquiring of each person surviving the decedent (Donnie L. Harris) and claiming to be entitled to compensation as a result of decedent's death, as

follows: "Kimberly Diane Harris, age now 20 ...; Amy Jolene Harris, 11021 Newland Street, Westminster, Colorado ...." The answer further showed Kimberly's birth date as 9/2/59 and Amy Jolene's as 9/15/76, and, significantly, that the decedent "advanced $500.00 for benefit of the minor child prior to his death." [Appendix, Vol. I, pp. 228–229]. Further, Kimberly's answers stated that: decedent was twice previously married, to Eva Butler of Georgia and thereafter to Mary E. Mista of Denver, Colorado, on January 18, 1975 and divorced from Mary on April 7, 1976; decedent is survived by one child, Amy Jolene Harris, born September 15, 1976; decedent married Kimberly on June 15, 1978, at Catoosa, Georgia. [Appendix, Vol. I, pp. 217–218].

Thus, it is obvious from Kimberly's pretrial responses to defendants' interrogatories that Amy Jolene Harris was born about one-and one-half years before Kimberly married Donnie Harris and that Amy Jolene and Mary E. Mista (formerly Mary E. Harris) each resided in Denver, Colorado.

In *Kodekey Electronics, Inc. v. Mechanex Corp.*, 486 F.2d 449 (10th Cir. 1973) we stated:

> We are satisfied the trial court committed no error in denying Appellants' Motion for a New Trial ... on the ground of Newly Discovered Evidence. Such a determination is not particularly favored by the courts, and rests largely and almost wholly within the sound judicial discretion of the trial court. Whether the newly discovered evidence would be likely to change the result of the District Court's decision is one peculiarly within the determination of but one man—the trial judge.

486 F.2d at p. 458.

We hold that the trial court did not err in denying appellants' motion for relief from judgment and motion for leave to take additional depositions.

The "newly discovered evidence", if relevant and material, was in existence many months prior to trial. Appellants, defendants below, failed to exercise due diligence to gain knowledge of facts which if true may have been the basis for relief under Rule 60(b), *supra*. Failure to exercise due diligence precludes appellants from obtaining any such relief. *In re Four Seasons Securities Laws Litigation*, 525 F.2d 500 (10th Cir. 1975). There is no adequate showing that the "newly discovered evidence" is such that it could not by the exercise of due diligence have been discovered in adequate time to present at trial. 7 *Moore's Federal Practice*, ¶¶ 60.23 and 60.-24, at 268–293 (2d ed. 1982). Furthermore, it appears that the "newly discovered evidence" was merely impeaching and thus not "newly discovered". 11 Wright and Miller, *Federal Practice and Procedure: Civil*, § 2859 (1973).

V.

We have carefully considered the balance of the contentions of error. We hold that they are without merit, individually and collectively.

WE AFFIRM.