FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellee,

v.

William S. BACHMAN; Anthony A. Trutanich; William T. Baird; Albert M. Birnie; James N. Donnerstag; Stephen G. Hoy; W.A. Hull; Jerry W. Neely; King Cooper, Jr.; Donald M. Koll; F. Michael Krotz; L & E Oil Venture, a partnership consisting of Rudy A. Landry and unknown others; Owen H. Lewis; Bruce Ludwig; Raymond I. Mahan; Kathlyn A. Mahan; Lowell W. Morse; Vera Morse; Beverly J. Oetting; Peter B. Reich; Roger C. Schultz; Priscilla Schultz; Dorothy D. Stanton; Harold James Schafer; Jess C. Wilson, Jr., Defendants,

and

Michael B. Birnie; William H. Birnie; Barbara P. Birnie; Laurence A. Bolton; Kenneth T. Carey; Robert M. Ellis; Ray Elner; Terry D. Evans; George H. Fox, Jr.; John M. Gilchrist, Sr.; Michael J. Gregoire; Brent F. Howell; David D. Hurford, Jr.; Christopher M. Job; Eldred J. Kunkel; Evelyn R. Kunkel; Paul J. Lupo; Key B. Lupo; J. Frank Mahoney, III; Judith M. Mahoney; Richard E. Oetting; Robert K. Ostengaard; Delmar D. Stanton; A.P. Tiddens; Boyd Van Ness; Donald R. Wheeler, Defendants–Appellants.

No. 88–1827.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1990.

---

Brinda K. White (Ronald L. Ripley with her on the briefs) of Linn & Helms, Oklahoma City, Okl., for defendants-appellants.

Mack J. Morgan, III, (Denise Cotter Villani with him on the brief) of Crowe & Dunlevy, Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN, BARRETT, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

The limited partners (defendants) of Brookwood Drilling Partnership 1980–I (Brookwood) appeal the district court's summary judgment that they are liable to the Federal Deposit Insurance Corporation (FDIC) for unpaid capital contributions under Okla.Stat.Ann. tit. 54, § 158, Unif. Limited Partnership Act (ULPA) § 17. The issues on appeal are (1) whether the FDIC, as successor to a creditor of Brookwood, can bring an action based upon § 158; if so, (2) whether the suit is barred by a statute of limitations, and (3) whether the limited partners are liable under § 158 in the circumstances presented by this case. We hold that the defendant limited partners waived the first issue by failing to raise it in the district court, and we affirm the district court's ruling that the FDIC's

action is not time barred and that the limited partners are liable.

The original limited partnership certificate of Brookwood filed with the Oklahoma Secretary of State, effective April 11, 1980, stated capitalization at one hundred dollars cash. The Brookwood limited partnership agreement was subsequently amended to provide that each limited partnership unit could be purchased by a capital contribution of $75,000 in cash or, alternatively, $20,000 cash and a $55,000 letter of credit to be used to secure a capitalization loan. The amended limited partnership certificate filed effective May 14, 1980, however, stated that all capital contributions made by limited partners, an aggregate of $3,525,-000, had been made "in cash" and that no further capital contributions would be required; the certificate did not specify that some portion of the stated contributions were in the form of letters of credit.

On May 14, 1980, the effective date of the amended certificate, Penn Square Bank made the capitalization loan to Brookwood in the amount of $2,585,000, secured by the letters of credit provided by Brookwood's limited partners. When the capitalization loan came due, the bank renewed it as a production loan, released the letters of credit, took a security interest in certain oil and gas wells, and required each limited partner to guarantee a prorated share of the loan. Eventually, after an extension and recollateralization, Brookwood defaulted on this loan. The FDIC (as successor through a series of bank failures) sued the limited partners, seeking the difference between the limited partners' capital contributions as stated in the amended certificate and their actual cash contributions, relying upon Okla.Stat.Ann. tit. 54, § 158, ULPA § 17. The district court granted summary judgment for the FDIC.

We will affirm the grant of summary judgment if it is clear from the record that there are no genuine issues of material fact and the FDIC is entitled to judgment as a matter of law. *See Willner v. Budig*, 848 F.2d 1032, 1033–34 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

I

■ The defendant limited partners argue that even if they owe the partnership the sums sought, the FDIC, not having first proceeded against the partnership, may not sue for amounts due to the partnership. Although they did not present this argument to the district court, defendants contend that determining whether the FDIC can properly pursue this cause of action is a question of "standing," which is a nonwaivable jurisdictional issue. We disagree.

Even if the proper construction of Okla. Stat.Ann. tit. 54, § 158, ULPA § 17, is that only a *judgment* creditor of a limited partnership can sue the limited partners under that provision, the requirement can be, and was, waived by defendants' failure to raise it in the district court. Defendants confuse the doctrine of standing with that of real party in interest.

"The law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action." C. Wright, *The Law of Federal Courts* § 13, at 60 (4th ed. 1983) [hereinafter *Law of Federal Courts* ]. The term "standing," however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between "standing" in its most technical sense and the concept of real party in interest under Fed.R.Civ.P. 17(a). *See generally* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1542 (1971) [hereinafter 6 *Federal Practice and Procedure* ]; 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 338–45 & nn. 6–8 (2d ed. 1984 & Supp.1989) [hereinafter 13 *Federal Practice and Procedure* ]; *Law of Federal Courts* § 13, at 59–60 & § 70, at 452–53 & n. 2. "[S]tanding pertains to suits brought by individuals or groups challenging governmental action which has allegedly prejudiced their interests. On the other hand, the real party in interest question is raised in those much

rarer instances between private parties where a plaintiff's interest is not easily discernible." *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir.1975); *see also K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 n. 7 (10th Cir. 1985) (whether incorporator could join corporation as plaintiff on a claim of fraudulent misrepresentation was a real-party-in-interest issue, not standing; "standing challenge is not properly raised in connection with real party in interest analysis under Rule 17(a)").

Using the term "standing" to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed. The instant case illustrates the problems that can result. Defendants are correct that standing may implicate the Article III requirement of a "case or controversy," an issue of subject matter jurisdiction which cannot be waived. However, failure to timely raise a real-party-in-interest defense operates as a waiver. *K–B Trucking*, 763 F.2d at 1153 n. 2; *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1373–74 (10th Cir.1982); 6 *Federal Practice and Procedure* § 1542, at 640 & 642–43. Even if standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues, this does not convert real party in interest into a nonwaivable issue of subject matter jurisdiction.[1]

Although the cases may refer to the question of whether a creditor can sue to enforce limited partners' obligations to make their stated capital contributions as a question of "standing," properly considered, these cases implicate the principle of the real party in interest under Fed.R. Civ.P. 17(a). Because the real-party-in-interest defense is for the benefit of defendants, they can waive it. *Audio–Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir.1976). Since this defense was not asserted in the district court, the limited partners should not be allowed to raise it for the first time on appeal.

## II

The district court held that the six-year statute of limitations contained in 28 U.S.C. § 2415(a) applies to this action and that the FDIC commenced suit well within that limit.[2] The limited partners contend that the district court should have applied the three-year statute of limitations contained in Okla.Stat.Ann. tit. 12, § 95 2d. We disagree.

The general rule is that "[w]here the government acquires a derivative claim ... and that claim is not then barred by the state statute of limitations, the state statute ceases to run against the government at the time of such acquisition." *United States v. Sellers*, 487 F.2d 1268, 1269 (5th Cir.1973); *see also United States v. Essley*, 284 F.2d 518, 521 (10th Cir.1960) ("[I]t is a well established rule that, without a clear manifestation of Congressional intent, the United States is not bound by state stat-

---

**1.** There is a sound reason to distinguish real party in interest from standing for purposes of waiver. A plaintiff's challenge to far-reaching governmental action is somewhat akin to a class action; the plaintiff acts on behalf of all others similarly situated. While subsequent challenges cannot be barred by res judicata, *but cf.* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4458, at 521–22 (1981) (advocating preclusive effect in some situations), if others contest the same action on the same legal grounds, the outcomes will be controlled by stare decisis. Consequently, standing jurisprudence requires the plaintiff to have a sufficient stake in the outcome of the proceedings to make the plaintiff an effective litigant. *See Law of Federal Courts* § 13, at 70; 13 *Federal Practice and Procedure* § 3531, at 345–47 & § 3531.3, at 409–10. The government should not be able to obtain its adversary of choice by waiving the

standing issue. In contrast, the consequences of waiver of real party in interest in private disputes are largely confined to the parties themselves. There is almost no risk of suit by one without a genuine stake in the issue, and defendants can be counted upon to raise the real-party-in-interest defense or interplead if they fear liability to another party on the same claim. *See Law of Federal Courts* § 13, at 60.

**2.** 28 U.S.C. § 2415(a), in relevant part, reads: "[E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...."

utes of limitations ... in enforcing its rights."); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3652, at 166–71 & n. 5 (2d ed. 1985 & Supp.1989). Defendants make no contention that this cause of action was time-barred when the FDIC acquired it.

In bank failure cases in which the FDIC succeeds to claims to enforce notes, guaranties, or other contracts, we have applied the six-year statute of limitations of § 2415(a). *See, e.g., Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142–43 (10th Cir.1985). A suit to enforce the statutory liability of a limited partner for stated capital contributions seems to be a quasi-contractual action within the reach of § 2415(a). *Cf. United States v. Neidorf*, 522 F.2d 916, 918–20 (9th Cir.1975) (action by United States as judgment creditor of corporation for recovery of distributions to shareholders which rendered corporation insolvent is quasi-contractual action subject to § 2415(a) six-year limitations period), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Thus, the FDIC's suit was timely filed.

### III

The defendant limited partners also contend that the letters of credit satisfied their obligations to make their stated capital contributions under Okla.Stat.Ann. tit. 54, § 158, ULPA § 17. Again, we disagree.

■ Although Brookwood's amended limited partnership agreement contemplated that some limited partners would use letters of credit to purchase their units, Brookwood's amended limited partnership certificate on file with the Oklahoma Secretary of State specified, without qualification, that all stated capital contributions by the limited partners had been made in cash. Okla.Stat.Ann. tit. 54, § 158(a)(1), ULPA § 17(1)(a), provides that "[a] limited partner is liable ... [f]or the difference between his contribution as actually made and that stated in the certificate [on file with the secretary of state] as having been made...." Under the circumstances of this case, this provision makes the limited partners liable for the portion of their stated capital contributions which were made by letters of credit in lieu of cash.

■ The plain terms of the amended certificate, stating falsely that all capital had been contributed in cash, warrant this outcome. But taking the analysis even further, we reach the same result. While Okla.Stat.Ann. tit. 54, § 145, ULPA § 4, declares that a limited partner's contributions may be cash or "other property," it is obvious that a limited partner's mere promise to pay his contribution is not sufficient to discharge his obligation to actually pay that contribution. A limited partner can promise to make future contributions, Okla.Stat.Ann. tit. 54, § 143(a)(1)(G), ULPA § 2(1)(a)(VII), but he nonetheless "is liable ... [f]or any unpaid contribution which he agreed in the certificate to make in the future at the time and on the conditions stated in the certificate," *id.* § 158(a)(2), ULPA § 17(1)(b). A letter of credit, in essence, is nothing more than a promise to pay that is secured by the credit of the issuing bank. *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–1, at 709 & § 18–2, at 713 (2d ed. 1980). Neither Penn Square Bank nor Brookwood ever drew on the letters of credit issued on behalf of the limited partners. Thus, in no real sense did the partnership receive the capital represented by the letters of credit. While the bank did release the letters of credit as security for their loan to Brookwood, "generally only conditions stated in the filed certificate of limited partnership will excuse payment of capital contributions...." *Partnership Equities, Inc. v. Marten*, 15 Mass.App.Ct. 42, 443 N.E.2d 134, 136–37 (1982). That the limited partners may have complied with the amended limited partnership agreement does not alter this result, since "a waiver or compromise [of a limited partner's liability for contributions stated in the certificate] shall not affect the right of a creditor of a partnership, who extended credit ... after the filing and before a cancellation or amendment of the certificate, to enforce

such liabilities." Okla.Stat.Ann. tit. 54, § 158(c), ULPA § 17(3).[3]

■ The limited partners contend that the FDIC cannot recover based upon the capital contributions stated in the amended certificate because the bank did not rely on the certificate in extending credit to Brookwood, or at the least, that there is a factual question regarding the bank's reliance, precluding summary judgment. If the FDIC were suing under Okla.Stat.Ann. tit. 54, § 147, ULPA § 6, no doubt this would be true.[4] But there is no reliance element to recovery under *id.* § 158, ULPA § 17. *Indiana Mortgage & Realty Investors v. Spira-Mart,* 115 Mich.App. 141, 320 N.W.2d 320, 322 (Ct.App.1982).[5]

AFFIRMED.

---

3. The defendant limited partners admit that Penn Square Bank extended credit to Brookwood after the filing of the amended limited partnership certificate. Brief of Appellants at 8.

4. Okla.Stat.Ann. tit. 54, § 147, ULPA § 6, in relevant part, provides: "If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any

party to the certificate who knew the statement to be false."

5. Significantly, recovery under Okla.Stat.Ann. tit. 54, § 158, ULPA § 17, which has no reliance requirement, is limited to the amount of the stated capital contribution, whereas, on proof of reliance a plaintiff can recover the full amount of any loss under *id.* § 147, ULPA § 6.