**THUNDER BASIN COAL COMPANY, Plaintiff,**

v.

**TUCO, INC., and Southwestern Public Service Company, Defendants.**

No. 93–CV–0304–B.

United States District Court, D. Wyoming.

Aug. 8, 1994.

---

Maston C. Courtney, Richard R. Wilfong, Wyatt L. Brooks, Amarillo, TX, and Kate M. Fox, Cheyenne, WY, for plaintiff.

David K. Isom, Salt Lake City, UT, and Thomas F. Linn, Denver, CO, for defendants.

*ORDER DENYING DEFENDANTS' MOTIONS TO STAY, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND TO DISMISS FOR FAILURE TO STATE A CLAIM*

BRIMMER, District Judge.

The above-entitled matter having come before the Court on the Defendants' Motions for a Stay and to Dismiss, and the plaintiff's oppositions thereto, and the Court, having considered the materials on file in support of and in opposition thereto, having heard oral

argument, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

### Background

This declaratory judgment action was initiated by plaintiff Thunder Basin Coal Company ("Thunder Basin") over a dispute concerning the terms of a coal supply agreement and a corresponding guaranty agreement. In order to fully understand the nature of the claims asserted, a brief review of the parties involved in this case is necessary.

On or about February 20, 1976, the Atlantic Richfield Company ("ARCO") entered into a coal supply agreement with TUCO, Inc., which, at that time, was a subsidiary of defendant Southwestern Public Service Company ("SPS"). Under this agreement, TUCO agreed to purchase certain quantities of coal from ARCO which TUCO would then resell to SPS for the latter's use at its Harrington Station electricity plant, located near Amarillo, Texas.

At the same time that the coal supply agreement was entered into between ARCO and TUCO, ARCO and SPS entered into another agreement entitled "Guaranty—Coal Supply Agreement" whereby SPS, the parent corporation of TUCO, guaranteed to ARCO the performance of TUCO's obligations under the coal supply agreement. The guaranty agreement was entered into for the purpose of inducing ARCO to enter into the coal supply agreement with TUCO by giving ARCO additional security in the event of TUCO's non-performance.

ARCO thereafter assigned its rights under both the guaranty agreement and the coal supply agreement to plaintiff Thunder Basin, a wholly-owned subsidiary of ARCO.[1] As a result, Thunder Basin was, at all times relevant to this litigation, under a contractual obligation to supply coal to TUCO pursuant to the coal supply agreement, while at the same time being a party to the guaranty agreement with SPS.

When a dispute arose over TUCO's purchase obligations under the coal supply agreement, Thunder Basin initiated this suit in this Court on October 18, 1993, naming both TUCO and SPS as defendants. In the jurisdictional section of the complaint, the plaintiff represented the following matters: (1) that it was a Delaware corporation with its principal place of business in Wyoming; (2) that TUCO was a Delaware corporation with its principal place of business in Texas; and (3) that SPS was a New Mexico corporation with its principal place of business in Texas. Thunder Basin sought primarily a declaratory judgment that TUCO was obligated to purchase approximately 12.8 million tons of coal under the coal supply agreement and not the 9 million tons that TUCO claimed it was obligated to purchase.

On February 24, 1994, TUCO and SPS moved to dismiss the initial complaint pursuant to Rule 12(b)(1) on the grounds that the complaint was, on its face, inadequate to establish subject matter jurisdiction in this Court because *both* Thunder Basin and TUCO were "citizens" of Delaware for diversity purposes. As such, there was no complete diversity of citizenship and dismissal was warranted.[2] While the defendants ac-

---

1. There is no dispute as to the propriety of these assignments.

2. 28 U.S.C. § 1332(a)(1) is an affirmative grant of subject matter jurisdiction to the federal district courts when the underlying action "is between—citizens of different States." This phrase has been interpreted since the earliest days of the Union as encompassing the requirement of "total diversity" whereby "all the parties on one side must have citizenship diverse to those on the other side." *Knoll v. Knoll*, 350 F.2d 407, 408 (10th Cir.1965) (*per curiam*) (citing, *inter alia*, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)), *cert. denied*, 383 U.S. 909, 86 S.Ct. 891, 15 L.Ed.2d 664 (1966), *cited in Oppenheim v. Sterling*, 368 F.2d 516, 518 & n. 9 (10th

Cir.1966), *cert. denied*, 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978) ("Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 *only when there is complete diversity of citizenship*.") (emphasis added).

When a corporate entity is involved, however, the issue of whether there is total diversity among all plaintiffs and defendants requires further analysis. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business...." This rule is

knowledged that Thunder Basin could seek an order allowing it to "drop" TUCO as a party-defendant under Rule 21, they also noted that if TUCO was deemed to be an indispensable party under Rule 19, then the complaint would have to be dismissed pursuant to *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361 (10th Cir.1982), where the Tenth Circuit held that "[t]here is sound authority for the proposition that a non-diverse party *whose presence is not essential under Rule 19* ... may be dropped to achieve diversity between the plaintiffs and the defendants." *Id.* at 1369 (emphasis added). Because SPS believed that TUCO was an indispensable party under Rule 19, it argued that dismissal of the complaint was necessary.

In the interim, TUCO and SPS initiated an action on February 16, 1994 in Texas state court in Amarillo naming Thunder Basin as a defendant. The complaint sought a declaratory judgment that TUCO's obligation to Thunder Basin under the coal supply agreement was limited to 9 million tons.

Thunder Basin thereafter sought to address the jurisdictional concern relating to diversity jurisdiction in the Wyoming action by filing an amended complaint on March 10, 1994, which named SPS as the sole defendant. In the amended complaint, Thunder Basin claimed that TUCO had partially repudiated the coal supply agreement by refusing to purchase the required number of tons of coal and that SPS had breached its obligations to Thunder Basin under the terms of the guaranty agreement.[3]

In addition, Thunder Basin filed an opposition to the defendants' motion to dismiss, taking issue with the assertion that TUCO was an indispensable party under Rule 19. In support of its position, Thunder Basin argued that TUCO was not a necessary party under Rule 19(a) nor was it an indispensable party under Rule 19(b), and further, that SPS had waived its right to claim that TUCO was an indispensable party to this litigation by way of a provision in the guaranty agreement.[4]

Shortly thereafter, TUCO and SPS moved to dismiss the amended complaint for failure to state a claim. The basis for this motion was that the complaint failed to allege any facts which would support a finding that TUCO had in fact repudiated its obligations. In the alternative, the defendants moved for a more definite statement under Rule 12(e) regarding the factual basis for the allegations of repudiation. Finally, the defendants moved for an order staying the Wyoming litigation in favor of allowing the Texas state court litigation to proceed instead. The plaintiff subsequently filed its oppositions to these motions.

### *Discussion*

#### A. *Jurisdictional Concerns*

At the outset, the Court will address the threshold issues relating to its subject matter jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982) (noting that subject mat-

---

often referred to as the rule of "dual citizenship." *E.g., Rodriguez v. SK & F Co.*, 833 F.2d 8, 9 (1st Cir.1987) *(per curiam); see also Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir.1993); *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914 (10th Cir.1993).

Thus, under the rule of dual citizenship, it is clear that Thunder Basin's initial complaint was defective in that Thunder Basin and TUCO were both "citizens" of Delaware and as a result, there was no complete diversity of citizenship.

3. Section 1 of the guaranty agreement provided that:

[SPS] hereby unconditionally and irrevocably guarantees to [Thunder Basin] the due and punctual performance of all duties and obligations of TUCO under the Coal Supply Agree-

ment and if any agreement, covenant or obligation of TUCO contained in the Coal Supply Agreement (whether of an affirmative or negative character) shall not be performed by TUCO, [SPS] will perform or cause to be performed each of such agreements, covenants and obligations.

Thunder Basin alleged that SPS breached its obligations by not "perform[ing] or caus[ing] to be performed" TUCO's obligations.

4. Section 4 of the guaranty agreement provides that:

[Thunder Basin] shall not be required to exhaust its remedies against TUCO for default under the Coal Supply Agreement before proceeding against Southwestern under this Guaranty.

ter jurisdiction affects a federal court's power to adjudicate a dispute).

### 1. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

#### a. *Availability of Declaratory Relief*

■ The first argument advanced by the defendants is that the amended complaint should be dismissed because there is no case or controversy presently before this Court. The plaintiff responds by asserting that the defendants have admitted in both their answer in this litigation and their complaint in the Texas state court litigation that a justiciable controversy does in fact exist.[5] Although the Court agrees with the plaintiff's conclusion that an actual controversy exists under Article III and the declaratory judgment statute, thereby mandating that the motion to dismiss be denied, the reasoning employed by the Court differs from the reasoning advanced by the plaintiff.

■ The Declaratory Judgment Act requires the obvious: that there be an actual case or controversy in existence prior to the adjudication of the merits of a claim. *See* U.S. CONST. art. III, § 1 (limiting the "judicial Power" to "cases" and "controversies"); 28 U.S.C. § 2201; *see also United States v. Fisher–Otis Co., Inc.,* 496 F.2d 1146, 1151 (10th Cir.1974); *Central Wyoming Law Assocs, P.C. v. Denhardt,* 836 F.Supp. 793, 800 (D.Wyo.1993) (Brimmer, J.). This statute "is only a procedural device and does not affect any underlying substantive rights." *Denhardt,* 836 F.Supp. at 799 (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)).

With respect to the issue of jurisdiction, "[i]t is a fundamental principle that the federal courts are courts of limited jurisdiction." *Drake v. Cheyenne Newspapers, Inc.,* 842 F.Supp. 1403, 1407 (D.Wyo.1994) (Brimmer, J.) (citing, *inter alia, Insurance Corp. of Ireland,* 456 U.S. at 701, 102 S.Ct. at 2104). The jurisdictional limitations on the subject matter of cases and controversies permitted to be brought in a federal court serve:

> as a restriction on federal power, and contribute[ ] to the characterization of the federal sovereign. *For example, no action of the parties can confer subject matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant* ...

*Id.* at 702, 102 S.Ct. at 2104 (emphasis added). It follows from this that the plaintiff's argument that the defendants have in effect conceded that there is an actual controversy is irrelevant and cannot support a finding of federal jurisdiction. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18 & n. 17, 71 S.Ct. 534, 541–42 & n. 17, 95 L.Ed. 702 (1951). Therefore, the Court must determine for itself "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Oil & Coal Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), *quoted in Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1273 (10th Cir.1989); *Denhardt,* 836 F.Supp. at 800. The declaratory judgment statute was designed to "enable[ ] parties uncertain of their legal rights to seek a declaration of rights *prior to injury.*" *Kunkel,* 866 F.2d at 1274 (emphasis added). Moreover, "[t]he contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication." *Id.* (citations omitted).

■ In essence, then, the purpose of the "actual controversy" language of the declaratory judgment statute is a means of preventing Article III courts from rendering "[a]dvance expressions of legal judgments upon issues which remain unfocused" and "which will likely never come to pass." *Id.* (citations omitted). It is, in other words, a restatement of the longstanding, and inherent, judi-

---

5. In paragraph 5 of their answer of March 21, 1994, the defendants state that the "averments of paragraph 6 of the Amended Complaint are admitted." Paragraph 6 of the amended complaint states that "[t]here is an actual controversy regarding the claims stated below." In addition, paragraph 9 of the defendants' original petition in the Texas state court action (where they are the plaintiffs) states that "[a] present, material dispute between the parties has arisen concerning the obligations of the parties [under the supply and guaranty agreements]."

cial prohibition against the issuance of advisory opinions. *See Muskrat v. United States,* 219 U.S. 346, 351–61, 31 S.Ct. 250, 251–55, 55 L.Ed. 246 (1911). Finally, the Tenth Circuit has held that this statute should not be given an "unduly restrict[ive]" interpretation, but rather, should be given a common-sense, "pragmatic" explication. *See Kunkel,* 866 F.2d at 1274.

 Applying these principles to the case at bar, the Court concludes that there is an actual controversy under Article III surrounding the agreements at issue and the respective obligations of the parties which is sufficiently immediate and imminent so as to constitute an actual controversy under Article III and the declaratory judgment statute. As in *Kunkel,* the present case is not one which is "nothing more than an abstract question dependent upon hypothetical facts." *Id.* Instead, the complaint in this case alleges a live, adversarial dispute relating to the relative obligations of TUCO under the coal supply agreement with Thunder Basin, and SPS' obligation under the guaranty agreement, disputes which are not abstract or metaphysical in substance. In addition, the parties have taken positions which are contrary to each other such that the requisite adversarial nature of this proceeding and the concreteness of the issues have been sufficiently established. It is worth reiterating that the declaratory judgment statute was designed to enable parties to obtain a judicial determination as to their rights "prior to injury" and does not require litigants to wait until the "damage has been done."

For all of the foregoing reasons, this Court concludes that the motion to dismiss for lack of a case or controversy must be denied.

### b. *Failure to Join TUCO*

The defendants' next argument is that the amended complaint must be dismissed pursuant to Rule 12(b)(7) for the failure to join TUCO as a party-defendant pursuant to Rule 19 of the Rules of Civil Procedure.[6]

### i. *Overview of Rule 19*

 Rule 19 of the Federal Rules of Civil Procedure provides for compulsory joinder of parties under certain defined circumstances.[7] The question of compulsory joinder in diversity cases is one which is governed by federal law. *See Provident Tradesmens Bank and Trust Co. v. Patterson,* 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968).

 Compulsory joinder is an exception to the common practice of allowing the plaintiff to decide who should be a party to a lawsuit. Under Rule 19, a court may compromise the plaintiff's choice of parties when significant countervailing considerations make joinder of absentee parties necessary for a complete and efficient resolution of the lawsuit. *See generally Bank of Keystone v. Wagensen,* 152 F.R.D. 644, 646 (D.Wyo.1994) (Brimmer, J.). The relevant considerations include: the interests of the present defendant, the interests of potential but absent plaintiffs and defendants, and the interest in the orderly and expeditious administration of justice. *See* 7 Charles A. Wright, et al., Federal Practice and Procedure § 1602 (2d ed. 1986) (citations omitted).

 The analysis under Rule 19 involves two distinct inquiries. First, is the party to be joined a "necessary" party under Rule 19(a)? If not, then the motion must be denied; if so, then the issue becomes is the party to be joined is an "indispensable" party under Rule 19(b) such that the Court cannot adjudicate the case in that party's absence and must therefore dismiss the action. *See Brown v. Chaffee,* 612 F.2d 497, 503 (10th Cir.1979).

Rule 19(a) sets forth the standards which identify those persons who should be joined

---

**6.** For reasons expressed earlier in this opinion, this motion could also be asserted as a motion to dismiss under Rule 12(b)(1) since a conclusion that TUCO must be joined under Rule 19 would deprive this Court of subject matter jurisdiction. The precise procedural vehicle is unimportant since the matter boils down to the same question on the merits: is TUCO a necessary and an

indispensable party under Rule 19 such that Thunder Basin's failure to join it warrants dismissal of the amended complaint.

**7.** The modifier "compulsory" is used to distinguish joinder under Rule 19 from so-called "permissive" joinder under Rule 20.

as parties to the action. Rule 19(a) states that a party should be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

FED.R.CIV.P. 19(a).

Once a court determines that a party is a "necessary" party under Rule 19(a), who cannot be joined because, *inter alia*, joinder would "deprive the court of jurisdiction over the subject matter of the action," then the issue under Rule 19(b) becomes "whether in equity and good conscience" the action may go forward in the party's absence or whether it should be dismissed because the party is "indispensable." In determining whether a particular party is indispensable, Rule 19(b) directs the court to consider:

> first, [the] extent [to which] a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED.R.CIV.P. 19(b). If the court concludes, after its analysis, that the absent party is in fact indispensable, then the remedy embodied in Rule 12(b)(7) is dismissal of the action.

### ii. *Application to the Case at Bar*

■ As noted above, the issue is whether it is appropriate for Thunder Basin to have amended its complaint to name only SPS as a defendant and to omit TUCO as a party-defendant. Specifically, the issue is whether TUCO's presence is essential to this litiga-tion under Rule 19. *See Harris,* 687 F.2d at 1369.

TUCO is, in this Court's opinion, a "necessary" party under Rule 19(a). In order to determine if SPS is liable for breach of the guaranty agreement, it is inevitable that the issue of TUCO's performance *vel non,* and its corresponding rights and obligations under the agreements, will *ipso facto* be implicated. Thus, under Rule 19(a)(2)(i)–(ii), the Court finds that TUCO is in fact a necessary party.

■ As a result, the analysis must shift to whether TUCO is an indispensable party. The defendants argue that TUCO is clearly an indispensable party under Rule 19 because "a contracting party is the paradigm of an indispensable party." *Travelers Indem. Co. v. Household International, Inc.,* 775 F.Supp. 518, 527 (D.Conn.1991) (discussing Rule 19(b)). In opposing this motion, however, the plaintiff contends that TUCO is not an indispensable party to an action by Thunder Basin because this suit was brought against SPS under the guaranty agreement, in its capacity as the guarantor of TUCO. In essence, Thunder Basin asserts that the guaranty allows it to proceed directly against SPS, the guarantor, without having to exhaust its remedies against TUCO. *E.g., Boulevard Bank National Assoc. v. Philips Medical Systems International,* 15 F.3d 1419, 1423 (7th Cir.1994).

■ Both the guaranty agreement and the coal supply agreement contain choice-of-law provisions which indicate that Wyoming law governs the construction of the contracts. *See* Coal Supply Agreement, § 28; Guaranty, § 11. Moreover, although not specifically addressed by the Wyoming courts, there is every reason to believe that the Wyoming courts would give effect to a contractual choice-of-law provision under general principles of contract interpretation. *See, e.g., Hensley v. Williams,* 726 P.2d 90, 94 (Wyo. 1986) (noting the general rule in Wyoming that a contract must be construed as a whole "and meaning should be afforded to all of the language if a reasonable construction can be achieved.").

Thus, while the defendant cites cases saying that TUCO should be considered an in-

dispensable party, and the case thereby dismissed, the plaintiff cites cases saying that the contracting party is not an indispensable party in a direct action against the guarantor. The problem with all of these cases is that they are dependent on the applicable substantive law that governs the dispute. For example, in *Boulevard Bank*, the court stated that *"[u]nder Illinois law*, a lender holding a guaranty of payment may sue a guarantor directly, without naming the borrower." *Boulevard Bank*, 15 F.3d at 1423 (emphasis added) (citations omitted); *see also Trailer Rental Co., Inc. v. Buchmeier*, 800 F.Supp. 759, 763 (E.D.Wis.1992) (interpreting Wisconsin law). As a result, none of these cases provide any authoritative guidance since the issue is whether, *under Wyoming law*, the obligee (Thunder Basin) can sue the guarantor (SPS) directly without proceeding against the principal/obligor (TUCO). In that regard, this Court has been unable to find any Wyoming cases on point.

The plaintiff, however, also asserts that SPS cannot claim that TUCO is an indispensable party because SPS waived its right to make such a claim by virtue of the "direct action" or non-exhaustion clause contained in section four of the guaranty, which states that:

> [Thunder Basin] shall not be required to exhaust its remedies against TUCO for default under the Coal Supply Agreement before proceeding against Southwestern under this Guaranty.

Guaranty, § 4. Thus, Thunder Basin argues that even if TUCO is a necessary party, SPS has essentially waived its right to claim that TUCO is an indispensable party to this action. *See Home Federal Bank for Savings v. Daly*, 1990 WL 114728, 1990 U.S.Dist. LEXIS 9210 (N.D.Ill. July 26, 1990) (concluding that the note maker was not an indispensable party in a suit by the holder against the guarantor by virtue of a direct action clause in a guaranty agreement).

Given the procedural posture of this case, which is before the Court on the defendants' Rule 12 motions, as opposed to a summary judgment motion under Rule 56, it is clear that the Court's determination is limited by the pleadings at issue and, unlike a motion for summary judgment, does not involve an assessment of the evidence adduced during discovery. In that regard, even if this Court were to assume, without deciding, that Wyoming law would be consonant with the defendants' position (i.e., that TUCO would otherwise be an indispensable party to this litigation), it appears that Thunder Basin's pleadings are sufficient to permit it to invoke the direct action/non-exhaustion clause in section 4 of the guaranty agreement, and that as such, SPS has waived its right to claim that TUCO is an indispensable party to an action against SPS.

Although the defendants contend that the plaintiff has failed to allege a sufficient factual basis for invoking the direct action clause (since it applies only where there is evidence that TUCO "defaulted" on its obligations), this Court disagrees. As noted earlier, Thunder Basin's only obligation *at this time* is to comply with the liberal notice pleading requirements of Rule 8(a).[8] Because the Court's discussion below concludes that the plaintiff has in fact stated a claim for repudiation, the Court finds that the direct action clause of the guaranty agreement must be given effect and that that clause precludes the defendant's argument that TUCO is an indispensable party under Rule 19(b). Therefore, the motion is denied.

### 2. *Motion to Stay Proceedings*

Having thus concluded that this Court has subject matter jurisdiction over this action, it is now appropriate to address the defendants' motion to stay.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court expounded on the doctrine of

---

8. Of course, if the plaintiff is unable to accumulate, through discovery, sufficient *evidence* which would establish that there is a genuine issue of material fact on the question of repudiation, then summary judgment may be warranted on these claims. *See White v. Continental General Ins.* *Co.*, 831 F.Supp. 1545, 1552 (D.Wyo.1993) (noting that a motion for summary judgment puts the non-moving party "to their proof" and does not permit reliance on the *allegations* of the pleadings, as is the case now on a Rule 12 motion).

federal abstention. Initially, the Court clearly and unequivocally declared that:

> [a]bstention from the exercise of federal jurisdiction is *the exception, not the rule.* The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an *extraordinary and narrow exception to the duty* of a District Court to adjudicate a controversy properly before it. *Abdication of the obligation to decide cases* can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would *clearly serve* an important countervailing interest.

*Id.* at 813, 96 S.Ct. at 1244 (emphases added) (internal quotations omitted). The Court went on to indicate that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred by Congress in a given case. *Id.* at 817–18, 96 S.Ct. at 1246, *quoted in Ankenbrandt v. Richards,* — U.S. —, —, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *McCarthy v. Madigan,* — U.S. —, —, 112 S.Ct. 1081, 1087, 117 L.Ed.2d 291 (1992).

The Court then set forth the relevant factors which should guide a district court's decision whether to abstain, which include the relative convenience or inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. *Id.* 424 U.S. at 818, 96 S.Ct. at 1247. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818–19, 96 S.Ct. at 1247.

Applying these teachings to the case at bar, this Court concludes that the requisite circumstances which weigh in favor of a stay of the exercise of federal jurisdiction are absent from this case. With all due respect to the Texas forum, this Court notes that the complaint in this Court was filed almost four months prior to the time when the complaint was filed in Texas; that Wyoming is no more or less inconvenient than Texas; and that the potential for piecemeal adjudication is established equally by this action going forward as much as it would be by the Texas proceeding going forward.

Perhaps more significantly, however, is the fact that the policies underlying the abstention doctrine—federalism, comity and other prudential concerns—are simply not implicated in this case,[9] and as a result, this Court must continue to exercise its constitutional obligation pursuant to Article III to adjudicate this action. As the great Chief Justice Marshall once observed, the federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (Marshall, C.J.), *quoted in McCarthy,* — U.S. at —, 112 S.Ct. at 1087. Therefore, the motion to stay is denied.

## B. *Motion to Dismiss for Failure to State a Claim*

 The defendants' final motion is made pursuant to Rule 12(b)(6) and alleges that the amended complaint should be dismissed for failure to state a claim for repudiation by TUCO.

The standard of review applied to a motion to dismiss for failure to state a claim is well-established. This Court must:

> accept all of the well-pleaded facts as true and draw all reasonable inferences in favor of the [non-moving party]. *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir.1990). Dismissal for failure to state a claim is appropriate only if the Plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson,* 355 U.S.

---

9. The cases indicate that abstention is more appropriate when the issues involve "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (citations omitted). No such concerns are presented by this case, which merely presents issues of contract interpretation under Wyoming law. *E.g., International Surplus Lines Insurance Co. v. University of Wyoming Research Corp.,* 850 F.Supp. 1509, 1518–20 (D.Wyo.1994) (Brimmer, J.) (summarizing the principles of contract interpretation under Wyoming law and collecting state court cases).

41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

*Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533 (10th Cir.1992); *see also Hospice of Metro Denver v. Group Health Ins. of Oklahoma, Inc.,* 944 F.2d 752, 753 (10th Cir.1992) *(per curiam )* (citing *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)).

 In this case, the defendants assert that the plaintiff's complaint fails to state a claim for repudiation because the only fact in support of this claim is that TUCO and SPS filed an action in Texas state court.[10] It is true, as defendants note, that merely urging a particular interpretation of a contract is insufficient as a matter of law to support a claim for repudiation. *See Bill's Coal Co. v. Board of public Utilities of Springfield, Missouri,* 682 F.2d 883, 886 (10th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

Notwithstanding the decision in *Bill's Coal,* the plaintiff correctly notes that this Court has previously held that the decision is limited in its applicability to situations where the complaint for repudiation was based, *in and of itself and without more,* on the other party's urging of a particular interpretation of the contract, and that where the defendant does more than merely espouse a particular interpretation but actually allows that inter-

pretation to affect its performance, then the plaintiff has in fact *stated a claim* for contractual repudiation. *See Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.,* 661 F.Supp. 1448, 1475 n. 3 (D.Wyo.1987) (Brimmer, C.J.), *aff'd in part and rev'd in part on other grounds,* 885 F.2d 683 (10th Cir.1989).

In accepting the truth of the allegations contained in the amended complaint, which have been pled in good faith,[11] along with the reasonable inferences to be drawn therefrom, *see Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991) (citation omitted), it is clear that Thunder Basin has in fact pled a claim under Rule 8(a) for repudiation under the governing substantive law of Wyoming, *see* Wyo.Stat. § 34.1–2–610 (1991), by alleging in the amended complaint that TUCO has "refused to purchase 3,861,933 tons" of coal, thereby constituting a manifestation of its intention not to perform its contractual obligations under the coal supply agreement. As such, the defendants' reliance on *Bill's Coal* is misplaced since the plaintiff is not relying solely on the defendants' act of filing suit in Texas state court as the basis for its claim for repudiation.

 For all the foregoing reasons, the Court finds that the motion to dismiss must be denied.[12]

---

**10.** Interestingly, however, the plaintiff's initial complaint in this Court was filed in October of 1993, well-before the defendants filed their complaint in Texas state court in February of 1994. Thus, it is difficult to see how the plaintiff's complaint for repudiation could, as the defendants assert, have been based on something that had not yet happened, namely, the filing of the Texas action.

**11.** *Cf.* Fed.R.Civ.P. 11(b)(1).

**12.** Moreover, the defendants' Rule 12(e) motion for a more definite statement must be denied as moot since they have already filed an answer.

It is well-settled that "[t]he purpose of the more definite statement is to enable the respondent to formulate defensive pleadings *and where the defensive pleadings have already been filed ... the motion for a more definite statement "* should be denied. *Kimberly–Clark Corp. v. Kleenize Chemical Corp.,* 194 F.Supp. 876, 878 (N.D.Ga. 1961) (emphasis added); *see also United States v. Scandia Mfg. Co.,* 101 F.Supp. 583, 584 (D.N.J. 1952) (noting that the purpose of a motion for a

more definite statement is to enable a party to frame a responsive pleading).

In *Fleming v. Mason & Dixon Lines, Inc.,* 42 F.Supp. 230 (E.D.Tenn.1941), the court noted that "Rule 12[(e)] is not intended to enable a defendant to require plaintiff to disclose matters of evidence beyond those necessary to enable defendant to know what the specific charge is." *Id.* at 231. The court also noted that as long as the plaintiff's pleading complies with the minimal notice requirements of Rule 8(a), a Rule 12(e) motion should usually be denied. *Id.* at 230.

In sum, therefore, "Rule 12(e) motions are designed to strike at unintelligibility, rather than a lack of detail in the complaint. *Woods v. Reno Commodities, Inc.,* 600 F.Supp. 574 (D.Nev. 1984). Therefore, a rule 12(e) motion properly is granted only when a party is unable to determine the issues he must meet." *Cox v. Maine Maritime Academy,* 122 F.R.D. 115, 116 (D.Me.1988) (citations omitted). Because the defendants have answered the complaint, and therefore are clearly on notice of the plaintiff's claim under Rule 8(a), the motion for a more definite statement is hereby denied. *See Kamin v. Colorado Nat'l*

Finally, with respect to the plaintiff's motion for partial summary judgment, the Court finds that that motion should be taken under advisement and reasserted during the argument on the defendant's motion for summary judgment which is set for argument on August 31, 1994 since both motions address the actual merits of the controversy. Specifically, the defendant's motion raises the question of whether there is a genuine issue of material fact regarding the question of repudiation; the plaintiff's motion goes to the merits of the contract and requests a determination of whether the contract is ambiguous as to the amount of coal that TUCO is required to purchase. This postponement of a ruling on the plaintiff's motion for partial summary judgment should not impose an undue hardship on the parties since the plaintiff's motion and the defendant's opposition thereto have already been briefed. In addition, it is more logical and efficient to address these motions, both of which deal with the merits of this complaint, together rather than separately.

**THEREFORE,** it is

**ORDERED** that the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be, and the same hereby is, **DENIED.** It is further

**ORDERED** that the Defendants' Motion to Stay be, and the same hereby is, **DENIED.** It is further

**ORDERED** that the Defendants' Motion to Dismiss for Failure to State a Claim be, and the same hereby is, **DENIED.**

*Bank of Denver,* 648 F.Supp. 52, 53 (D.Colo. 1986) (noting that it is "disingenuous" for a defendant to claim a lack of notice and to move for a more definite statement once an answer has been filed).